1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  WALTER L. TAMOSAITIS, PHD,      )
   an individual, and SANDRA B.    )
8  TAMOSAITIS, representing the    )
   marital community,              )    No. CV-11-5157-LRS
9                                  )
                                   )    **ORDER RE DOE'S**
10             Plaintiffs,         )    **MOTION TO DISMISS**
                                   )
11         vs.                     )
                                   )
12  URS, INC., a Delaware Corporation; )
    URS ENERGY & CONSTRUCTION,)
13  INC., an Ohio Corporation, and the )
    DEPARTMENT OF ENERGY,         )
14                                 )
                                   )
15             Defendants.         )
   _____)
16

17         **BEFORE THE COURT** is the Motion To Dismiss For Lack Of Subject

18  Matter Jurisdiction And Failure To State A Claim (ECF No. 45) filed by Defendant

19  United States Department of Energy (DOE).  This motion was heard with oral

20  argument on May 3, 2012.  Rolf H. Tangvald, Esq., Assistant U.S. Attorney,

    argued for DOE.  John P. Sheridan, Esq., argued for Plaintiffs.

21         Plaintiffs, Walter L. Tamosaitis, Ph.D., and his wife, Sandra, bring this

22  action against the Defendants, URS Corporation, URS Energy & Construction,

23  Inc., and DOE, asserting they violated the whistleblower protection provision of

24  the Energy Reorganization Act (ERA), codified at 42 U.S.C. §5851.  Pursuant to

25  Fed. R. Civ. P. 12(b)(1), DOE asserts four grounds to dismiss it as a Defendant for

26  lack of subject matter jurisdiction:  1) DOE is entitled to sovereign immunity and

27  the Plaintiffs' First Amended Complaint (ECF No. 7) sets forth no basis on which

28

**ORDER RE DOE'S**
**MOTION TO DISMISS-**          **1**

DOE has consented to suit or waived immunity; 2) DOE is not Plaintiffs' employer under the ERA; 3) the court lacks jurisdiction to award the injunctive relief Plaintiffs have requested against DOE; and 4) Plaintiffs have failed to exhaust administrative remedies.  DOE asserts that Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim is also warranted because DOE is not Plaintiffs' employer under the ERA and the court is not statutorily authorized to award the injunctive relief requested by Plaintiffs.

**FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

42 U.S.C. Section 5851(b)(4) provides:

> If the Secretary [of the Department of Labor (DOL)] has not issued a final decision within 1 year after the filing of a complaint . . . and there is no showing that such delay is due to the bad faith of the person seeking relief under this paragraph, such person may bring an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.[1]

Plaintiffs did not wait the required one-year period after filing their administrative complaint against DOE to initiate the captioned action against DOE.  Dr. Tamosaitis filed his administrative complaint with DOL on July 30, 2010, but on December 15, 2010, he file an amended administrative complaint adding DOE as a respondent.  On October 14, 2011, at his request, Dr. Tamosaitis'

///
///
///
///
///
///

---

[1] When DOL issues a final decision, it is reviewable by the circuit court of appeal in which the violation allegedly occurred.  42 U.S.C. Section 5851(c).

**ORDER RE DOE'S**
**MOTION TO DISMISS-        2**

administrative complaint was dismissed by DOL.[2]    On November 9, 2011, Plaintiffs commenced the action before this court.[3]    As against DOE, the administrative complaint had not been pending a full year before it was dismissed and Plaintiffs proceeded with suit in this court.  Plaintiffs did not allow DOL a full year to act on the administrative complaint as against DOE.

Plaintiffs contend that since the original administrative complaint was filed on July 30, 2010, against parties other than DOE, they waited over one year to commence their action in this court on November 9, 2011.  Therefore, Plaintiffs assert the action in this court was properly commenced pursuant to the plain language of 42 U.S.C. Section 5851(b)(4).  Plaintiffs have not cited any authority for the proposition that a  new party to an administrative complaint can be added at any time and then the jurisdiction of the district court can be sought without giving DOL the opportunity to investigate and review the complaint, in particular

---

[2]  Plaintiffs object that this information is derived from material which is extraneous to the pleadings.  Rule 12(d) states that if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present all of the material pertinent to the motion.  DOE's motion to dismiss for failure to exhaust administrative remedies is brought under 12(b)(1) for lack of subject matter jurisdiction.  On a 12(b)(1) motion, the court can consider extraneous material, particularly when its authenticity is not questioned. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir. 2003).  Plaintiffs do not dispute that the administrative complaint was dismissed on October 14, 2011.

[3]  The original complaint was filed November 9, 2011 and the First Amended Complaint was filed December 20, 2011.

**ORDER RE DOE'S**
**MOTION TO DISMISS-**        **3**

the allegations against the newly added party.   At oral argument, Plaintiffs represented that they did not have a basis for including DOE as a respondent in the original administrative complaint filed July 30, 2010, until after discovery had been conducted in the state court litigation commenced by Plaintiffs against Bechtel National, Inc. (BNI), and other individual defendants.  *Tamosaitis v.Bechtel National, Inc., et al.*, Benton County Superior Court Cause No.  10-2-02357-4. DOL was entitled to an adequate opportunity to investigate the particular and unique allegations against DOE to determine if it had any liability under the ERA.  By statute, DOL had at least a year from the date DOE was added as respondent to look into those allegations against DOE. 42 U.S.C. § 5851(b)(4) says  "1 year after the filing of the complaint," not "1 year after filing of the *original* complaint." (Emphasis added).

The court agrees with DOE that holding DOL to a one year period to conduct an investigation and make a final determination, notwithstanding subsequent addition of new parties to the administrative complaint would conflict with congressional intent to allow DOL to use its specialized knowledge and expertise to investigate and make determinations; would destroy the goal of Congress to have uniformity in the decision-making process; and would encourage forum shopping by allowing plaintiffs to selectively avoid the administrative scheme established by Congress.

Dismissal of DOE from the captioned action for lack of subject matter jurisdiction is warranted for failure to exhaust administrative remedies against DOE.  It is unclear whether Dr. Tamosaitis could now re-file an administrative complaint against DOE or whether he would be procedurally barred from doing so. In particular, the court notes that an administrative complaint  must be filed within 180 days after an alleged violation occurs. 42 U.S.C. Section 5851(b)(1).

**ORDER RE DOE'S**
**MOTION TO DISMISS-          4**

**EMPLOYER-EMPLOYEE RELATIONSHIP**

The ERA protects an "employee" from being discriminated against by his or her "employer" for engaging in whistleblowing activities. The terms "employer" and "employee" are not defined by the ERA. The ERA provides a list of specific entities, including DOE, who potentially qualify as "employers" under the ERA, 42 U.S.C. § 5851(a)(2), but it does not offer a general definition of "employer."

Plaintiffs' First Amended Complaint alleges "Dr. Tamosaitis is an employee of URS, and for the purposes of this claim, he is also an employee of the DOE under *Stephenson v. National Aeronautics and Space Admin.*, ALJ No. 94-TSC-5, ARB No. 98-025 (ARB July 18, 2000)." (See Paragraph 1.7 of First Amended Complaint). *Stephenson* is a decision by DOL's Administrative Review Board (ARB). *Stephenson* involved the whistle blowing provisions of the federal Clean Air Act (CAA). In its July 18, 2000 decision, the ARB noted that twice already it had "ruled that an employer who is **not an employee's common law employer** may nevertheless be held liable for retaliation under the CAA employee protection provision" and therefore, that the law of the case doctrine prohibited the ALJ from ruling to the contrary. (Emphasis added). In its February 13, 1997 decision remanding the matter to the ALJ, the ARB held it was clear Stephenson was not an employee in the common law sense of the term, but that the relevant question was "whether [Stephenson] is protected under the CAA against retaliation by an entity which, albeit not her direct or immediate employer, is nonetheless a covered employer." 1997 WL 65773 at *2, ALJ No. 94-TSC-5, ARB No. 96-080. According to the ARB in its 2000 decision:

> Here, the ALJ neither acknowledged the principles of the Board articulated on the employer/employee issue in this case, nor did he conform his proceedings to them. In this case, it has been undisputed from the outset that Stephenson was a common law employee of Martin Marietta, which was, in turn, a contractor for NASA. However, we held that the reach of the CAA employee protection provision may, depending on the specific facts of the case, encompass an employee who is not a common law employee of the respondent employer. The ALJ's failure to look beyond the

**ORDER RE DOE'S
MOTION TO DISMISS-          5**

common law definition of employee in evaluating the evidence in this case was contrary to our specific holding.

As we discuss in the following section of this decision, Stephenson failed to prove that she engaged in activity which was protected by the CAA whistleblower provision.  Therefore, we need not determine whether NASA's substantial involvement in Stephenson's work environment (e.g., its bar on her working in, or even entering the Space Center complex, and NASA's action prohibiting Stephenson from talking with her NASA counterparts) rose to a sufficiently intense level of involvement and interference in Stephenson's employment that NASA might be held to come within the ambit of the CAA's whistleblower protection provision.

ARB No. 98-025, slip op. at *13.

What the ARB found in *Stephenson* was that it was possible, at least under the CAA whistleblower provision, that even if an individual did not qualify as a common law employee of an entity under the U.S. Supreme Court's criteria set forth in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344 (1992), he or she might still qualify as an employee of that entity if its involvement and interference in the employment rose to a sufficiently intense level.  In its February 1997 decision, the DOL ARB held: "[I]n a hierarchical employment context, an employer that acts in the capacity of an employer with regard to a particular employee may be subject to liability under the environmental whistleblower provisions, notwithstanding the fact that the employer does not directly compensate or immediately supervise the employee.  A parent company or contracting agency acts in the capacity of an employer by establishing, modifying or otherwise interfering with an employee of a subordinate company regarding the employee's compensation, terms, conditions or privileges of employment."  1997 WL 65773 at *2.

*Stephenson*, a twelve year old DOL ARB decision, is simply too slender a reed upon which this court is willing to declare the existence of a general rule that it is possible for a government contracting agency to be deemed an "employer ," even though it does not directly compensate or immediately supervise the employee and would not qualify as an "employer" under the common law factors set forth in

**ORDER RE DOE'S
MOTION TO DISMISS-        6**

1   *Darden*.  No court has so declared under the ERA, let alone the CAA which was
2   at issue in *Stephenson*.  A rule that a "sufficiently intense level of involvement and
3   interference" could qualify a government contracting agency as an "employer"
4   under the ERA would effectively read out any limitation on the meaning of
5   "employer," contrary to the Supreme Court's ruling in *Darden*.  In any event, as
6   discussed below, DOE's alleged involvement in Dr. Tamosaitis' employment was
7   not remotely as intense as that alleged in *Stephenson*.

8        There is no question under the *Darden* common law factors that Dr.
9   Tamosaitis is an employee of URS Energy & Construction, Inc. (URS E & C), in
10  that a master-servant relationship exists between them.   URS E & C is a
11  subcontractor of Bechtel National, Inc. (BNI) which is a general contractor of DOE
12  with regard to construction of the Waste Treatment Project (WTP) at the Hanford
13  Nuclear Reservation.  DOE has not contracted with URS E & C.  DOE is not a
14  "contracting agency" with URS E & C like NASA was with Martin Marietta in
15  *Stephenson*.

16       Plaintiffs allege that DOE Federal Project Director for the WTP, Dale
17  Knutson, conspired with BNI manager Frank Russo to remove Dr. Tamosaitis from
18  the WTP, citing to an e-mail which Knutson sent to Russo telling Russo to
19  "[p]lease use this message to accelerate staffing changes or to 'color' your
20  conversations with Scott Ogilvie [BNI's president]."  Plaintiffs also cite to notes
21  taken by URS Human Resources Manager Cari Krumm stating that:

22           [Russo] said that Dale [Knutson] said that Walt could go
             blow the whistle.  We will not pay for him on this project.
23           If he works, it will be unallowable costs.  The Federal
             Director [Knutson] was not going to respond to threats of
24           whistle blowing.

25  Based on these two sources of information, the First Amended Complaint alleges
26  "Knutson was directly involved in the decision to terminate Dr. Tamosaitis from
27  the WTP" and "also participated in the decision that Dr. Tamosaitis not be returned
28  to the WTP after hearing that Dr. Tamosaitis was a whistleblower." (Paragraphs

**ORDER RE DOE'S**
**MOTION TO DISMISS-**          **7**

2.60 and 2.156 of First Amended Complaint).

Knutson's single cryptic comment to BNI is contrasted with the circumstances in *Stephenson* where the NASA division chief directly and unequivocally informed Martin Marietta officials she did not want Stephenson handling any flight hardware and decided that Stephenson should not be allowed to work on, or even be near, NASA space hardware.  Subsequently, the NASA division chief took things a step further and advised Martin Marietta officials that she did not want Stephenson "in the clean room, in any part of the Space Center, or talking about work to NASA Life Sciences personnel."

Dr. Tamosaitis does not qualify as an "employee" under *Darden's* common law test.  DOE did not hire Dr. Tamosaitis and there was and is no contractual relationship between Dr. Tamosaitis and DOE.  According to *Darden*:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant the inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; the tax treatment of the hired party.

503 U.S. at 323-24.  Plaintiffs do not single out any of these specific factors in arguing that Dr. Tamosaitis is an employee of DOE, instead contending it is necessary to look at the "economic realities" of the situation.  There is, however, "no functional difference" between the "economic realities" test and the *Darden* common law analysis. *Murray v. Principal Fin. Group, Inc.*, 613 F.3d 943, 945 (9th Cir. 2010).  The common law test is also known as an "economic realities" test, *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996), and *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980).

**ORDER RE DOE'S**
**MOTION TO DISMISS-          8**

According to Plaintiffs:

> This court must look at the "economic realities" of
> the situation. DOE is the contracting agency that owns
> and operates the WTP. DOE Federal Director Knutson's
> directive to Bechtel to "accelerate staffing changes" to
> remove Dr. Tamosaitis from the WTP and his statement
> "[w]e will not pay for [Dr. Tamosaitis] on this project"
> are evidence of DOE's control over the project and the
> economic realities that DOE could refuse to fund certain
> individuals like Dr. Tamosaitis.

It is necessary to read quite a bit into Knutson's e-mail to describe it as a "directive" to specifically remove Dr. Tamosaitis from the WTP. Furthermore, Knutson's purported statement that "we will not pay for [Dr. Tamosaitis] on this project" is derived from hearsay upon hearsay (notes by the URS Resources manager about what Russo of BNI stated about what Knutson stated). While Knutson's e-mail and Russo's purported statement may be factually sufficient to state a common law interference with contract claim, they are insufficient to state a claim under the ERA in that they do not establish that DOE controlled the manner and means of Dr. Tamosaitis's work for URS E & C such that DOE could also be deemed an "employer" of Dr. Tamosaitis under the *Darden* test.[4]   As DOE notes, an interference with contract claim is not legally cognizable against it under the Federal Tort Claims Act (FTCA), 28 U.S.C. Section 2680(h).

Plaintiffs' reliance on *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011), is unavailing because it analyzed whether a plaintiff who "was not a

---

[4] Two or more entities may function as a joint employer for purposes of liability for violations of the federal employment laws. Each entity must qualify as an employer under the *Darden* test (i.e., power to hire and fire the employees; supervise and control employee work schedules or conditions of employment; determine the rate and method of payment; and maintain employment records). *Allen v. CH2M-WG, Idaho, LLC*, 2009 WL 1658018 (D. Idaho 2009)(citing various court and administrative decisions).

**ORDER RE DOE'S**
**MOTION TO DISMISS-          9**

municipal court employee," should be treated "as a public employee for purposes of determining whether he has alleged a viable First Amendment retaliation claim." This is not the same analysis as whether an individual is in fact an "employee" of a particular entity under a federal statute. In *Clairmont*, the court did not apply the *Darden* common law test for ascertaining whether an individual was in fact an "employee" of a particular entity. That was not the relevant inquiry. All the court needed to determine was whether the individual plaintiff's relationship to the municipal court "was **analogous** to that of an employer and employee." (Emphasis added). It answered this inquiry affirmatively and concluded the plaintiff should be treated as if he were a public employee.

**REQUESTED RELIEF**

   The relief available for violation of 42 U.S.C. Section 5851 includes ordering reinstatement of the complainant to his former position together with compensation (including back pay), terms, conditions, and privileges of his employment, ordering payment of compensatory damages, and taking affirmative action to abate the violation.  42 U.S.C. Section 5851(b)(2)(B).

   Plaintiffs claim the relief they seek from DOE is intended to "abate" the violation.  The authority cited by Plaintiffs, however, clearly recognizes this relief is limited to the particular individual involved and the particular misconduct involved.  The injunctive relief requested by Plaintiffs in their First Amended Complaint (Paragraphs 4.8 through 4.11) goes far beyond remedying the alleged retaliation against Dr. Tamosaitis.  The court does not have jurisdiction to grant this type of relief.  Plaintiffs do not request that DOE reinstate Dr. Tamosaitis to a "leadership position at the WTP," nor do they request compensatory damages be paid by DOE.  (Paragraphs 4.1 through 4.7 of First Amended Complaint).  Compensatory damages are sought specifically as against Defendant "URS," further proof that DOE was not and is not the "employer" of Dr. Tamosaitis under

**ORDER RE DOE'S**
**MOTION TO DISMISS-           10**

1  the *Darden* test.

2

3  **CONCLUSION**

4      DOE's Motion To Dismiss For Lack Of Subject Matter Jurisdiction And

5  Failure To State A Claim (ECF No. 45) is **GRANTED**.  Plaintiffs have failed to

6  exhaust their administrative remedies and therefore, the court is without subject

7  matter jurisdiction to consider their claim against DOE under the ERA.  Because

8  DOE was not and is not Plaintiffs' "employer," and Plaintiffs have failed to allege

9  such in their First Amended Complaint, the court does not have subject matter

10 jurisdiction to consider their claim against DOE under the ERA and the First

11 Amended Complaint fails to state a claim against DOE under the ERA which can

12 be granted.  Finally, the court does not have subject matter jurisdiction or statutory

13 authority under the ERA to grant the relief requested in the First Amended

14 Complaint against DOE.  For all of these reasons, DOE is **DISMISSED** as a

15 Defendant from the captioned action pursuant to Fed. R. Civ. P. 12(b)(1) and

16 12(b)(6).  The dismissal is **with prejudice** because it is not apparent Plaintiffs

17 could now exhaust administrative remedies as to DOE and, moreover, Plaintiffs

18 could not amend their First Amended Complaint to allege additional facts stating

19 a claim against DOE as the "employer" of Dr. Tamosaitis and seeking relief

20 consistent therewith.[5]

21 ///

22 ///

23 ///

24

25      [5] The court need not consider whether 12(b)(6) dismissal is warranted on the

26 asserted basis that Plaintiffs fail to allege they engaged in conduct protected by

27 the ERA.

28 **ORDER RE DOE'S**
   **MOTION TO DISMISS-       10**

///

**IT IS SO ORDERED**.  The District Executive shall forward copies this order to counsel of record.

**DATED** this ___24th___ of May, 2012.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER RE DOE'S
MOTION TO DISMISS-          11**