1

2

3

4                    UNITED STATES DISTRICT COURT

5                    EASTERN DISTRICT OF WASHINGTON

6

7   WALTER L. TAMOSAITIS, PHD,        )
    an individual, and SANDRA B.      )
8   TAMOSAITIS, representing the      )
    marital community,                )   No. CV-11-5157-LRS
9                                     )
                                      )   **ORDER GRANTING**
10                                    )   **MOTION FOR SUMMARY**
              Plaintiffs,             )   **JUDGMENT**
                                      )
11            vs.                     )
                                      )
12  URS CORPORATION a Delaware        )
    Corporation; URS ENERGY &         )
13  CONSTRUCTION, INC., an Ohio       )
    Corporation, and the DEPARTMENT   )
14  OF ENERGY,                        )
                                      )
15            Defendants.             )
    _____   )
16

        **BEFORE THE COURT** is Defendant URS Energy & Construction's (URS

17  E & C's) Motion For Summary Judgment (ECF No. 108).[1]  This motion was heard

18  with oral argument on September 27, 2012.

19

20

21  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

22        The first three administrative complaints filed by Plaintiff, Walter L.

23  Tamosaitis, Ph.D., with the Department of Labor (DOL) on July 30, 2010 (First

24  DOL Complaint), December 15, 2010 (First Amended DOL Complaint), and

25

26        [1]Because of previous orders entered by the court, Walter L. Tamosaitis,

27  Ph.D., is the sole remaining Plaintiff in the captioned matter and URS E & C is

28  the sole remaining Defendant.

    **ORDER GRANTING MOTION**
    **FOR SUMMARY JUDGMENT-    1**

September 1, 2011 (Second Amended DOL Complaint), named "URS, Inc." as a respondent.  There is no such entity as "URS, Inc..".

It was not until September 7, 2011, in his "Corrected" Second Amended Complaint, that Dr. Tamosaitis first named URS Corporation as a respondent in the administrative proceedings.  On that same date, Dr. Tamosaitis filed a "Notice Of Federal Filing" with DOL.  Pursuant to that filing, his administrative complaint was dismissed by DOL on October 14, 2011.  In its "Order Granting URS Corporation's Motion For Summary Judgment" (ECF No. 100), this court found that because Dr. Tamosaitis did not have an administrative claim pending specifically against URS Corporation for one year before he "opted out" pursuant to 42 U.S.C. Section 5851(b)(4) of the Energy Reorganization Act (ERA) and filed the captioned suit in federal court on November 9, 2011, he did not exhaust administrative remedies against URS Corporation as required.  This court held it was without subject matter jurisdiction to hear ERA claims against URS Corporation.  This reasoning  mandates the same result as to URS E &C because it was not specifically named  a respondent in the DOL administrative proceedings until the filing of the Second Amended DOL Complaint on September 1, 2011.[2]

Although the First DOL Complaint filed on July 30, 2010 named "URS, Inc.," a non-existent entity, as the respondent, URS Corporation submitted a responsive statement to the DOL investigator, dated September 21, 2010 (Ex. P to ECF No. 112).  That statement identified URS E & C, "a wholly-owned subsidiary of URS Corporation," as the employer of Dr. Tamosaitis.  (*Id*. at p. 106)  It can be argued that based on this statement, URS Corporation and DOL knew the specific

---

[2]Nor were URS Corporation and URS E & C specifically named as respondents within 180 days after the date of the alleged wrongful action, that being the removal of Dr. Tamosaitis from the Waste Treatment Plant (WTP) project on July 2, 2010.  42 U.S.C. Section 5851(b)(1).

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    2**

entities whom Dr. Tamosaitis was complaining about and why. Even if that is so, because Dr. Tamosaitis "opted out" on September 7, 2011, when he filed his "Notice Of Federal Filing" with DOL, he did not wait the full year given to DOL to issue a final decision as required by 42 U.S.C. Section 5851(b)(4). Dr. Tamosaitis "opted out" then, not when the administrative proceedings were formally dismissed by DOL on October 14, 2011.

Jurisdictional provisions in federal statutes are to be strictly construed. *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C. Cir. 1986) U.S.C. Section 5851(b)(4) is such a provision: "If the Secretary [of DOL] has not issued a final decision within 1 year after the filing of a complaint under paragraph (1), and there is no showing that such delay is due to the bad faith of the person seeking relief under this paragraph, such person may bring an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." The exercise of jurisdiction by a district court is expressly conditioned upon DOL having a full year to issue a final decision and not doing so. The only exception is for the benefit of DOL in the event the claimant has been responsible for delay in issuance of the final decision. That exception does not apply in this case.

**PARTY RESPONSIBLE FOR ADVERSE ACTION**

In the alternative, URS E & C contends it is entitled to summary judgment because there is no genuine issue of material fact that it bears no responsibility for the adverse action taken against Dr. Tamosaitis and therefore, is not subject to liability under the ERA.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P.

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    3**

56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

For an employee to prevail under the ERA, he must show: (1) he engaged in protected conduct; (2) the employer was aware of this conduct; and (3) the employer took adverse action because of this conduct. *Hasan v. U.S. Dept. Of Labor*, 298 F.3d 914, 916 (10th Cir. 2002). In the instant case, the question is not if there is a genuine issue of material fact whether Dr. Tamosaitis engaged in protected activity and whether he was removed because of it. URS E & C acknowledges that its motion assumes Dr. Tamosaitis engaged in protected conduct and that he was retaliated against because of that conduct by being removed from

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    4**

1   the WTP project.  The question is if there is a genuine issue of material fact
2   whether URS E &C retaliated against Dr. Tamosaitis and whether it took adverse
3   action against him because he engaged in protected conduct.

4       Dr. Tamosaitis has not presented evidence raising a genuine issue of material
5   fact that his employer, URS E & C, "took adverse action because of his conduct."
6   On the contrary, the undisputed material facts reveal that Bechtel National, Inc.
7   (BNI), the prime contractor, was solely responsible for his removal from the WTP
8   project and is the entity which "took adverse action" against him.

9       BNI was contractually authorized to demand that URS E & C, the
10  subcontractor, remove him from the WTP project.   The BNI-URS E & C
11  Subcontract contains the following clause under the heading "Material And
12  Workmanship:"

13              All work under this contract shall be performed in a
               skillful and workmanlike manner.  The Contracting Officer
14             may require, in writing, that the Contractor remove from
               the work any employee the Contracting Officer deems
15             incompetent, careless or otherwise objectionable.

16  (ECF No. 112, Ex. J at BNI00036268).  An identical clause is contained in the
17  prime contract between BNI and DOE, but the BNI-URS E & C Subcontract
18  specifies that:

19              Whenever necessary to make the context of these clauses
               applicable to this Subcontract, the term "CONTRACTOR"
20             shall mean "SUBCONTRACTOR" and the term "Contract"
               shall mean this Subcontract, **and the term "Government",**
21             **"Contracting Officer" shall mean Bechtel National, Inc.**
               **(BNI) . . . or BNI's representative . . . .**
22
23  (*Id*. at BNI00036160)(Emphasis added).

24      BNI employee, Frank Russo, Project Director for the WTP project and BNI's
25  senior most representative on the project, instructed URS E & C to remove Dr.
26  Tamosaitis from the project.  Russo did so in writing, as evidenced by his July 1,
27  2010 e-mail to URS E & C manager William Gay, directing Gay to get Dr.
28  Tamosaitis "in your corporate office today" and off the WTP site. (Ex. L to ECF

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    5**

No. 112).  The fact Russo may not have held the specific title of "Contracting Officer" is of no consequence as he clearly was the foremost agent of BNI with regard to the WTP project, was authorized to act on behalf of BNI with regard to the WTP project, and was otherwise "BNI's representative" with regard to the WTP project.  Under the plain terms of the subcontract, Russo was authorized to require the removal of Dr. Tamosaitis from the WTP project and he did so.  Further proof of that authority is another clause in the Subcontract stating that "the extent of the work to be done by the Contractor shall be subject to the general supervision, direction, control, and approval of the Contracting Officer." (ECF No. 157, Ex. J-1 at BNI 00036270).  "Contractor," of course, means "Subcontractor" URS E & C, and "Contracting Officer" means "Bechtel National, Inc. (BNI) . . . or BNI's representative."

Dr. Tamosaitis  has not presented any evidence raising an issue of material fact that URS E & C conspired with BNI to remove him from the WTP project because of any protected conduct in which he engaged.[3]  There is no evidence that

---

[3] At oral argument, counsel for Dr. Tamosaitis represented that the Benton County Superior Court found there was a genuine issue of material fact on Plaintiff's civil conspiracy claim (civil conspiracy between BNI and URS), thereby  precluding summary judgment .  The court is not aware of this decision having been made part of the record.  Counsel for URS E & C asserts the Benton County Superior Court merely denied a Rule 12 motion to dismiss, finding that the allegations contained in Plaintiff's complaint were sufficient to state a claim for civil conspiracy.  A review of the docket sheet from Benton County (10-2-02357-4) appears to bear out that the only summary judgment disposition concerned the tortious interference claim asserted against BNI which was the only claim remaining after Plaintiff voluntarily dropped his civil conspiracy claim and all of the URS defendants.

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    6**

URS E &C knew of BNI's intentions before Russo issued his directive.  In prior proceedings in Benton County Superior Court, counsel for Dr. Tamosaitis acknowledged that "Russo is the person who clearly was behind the decision to remove [Dr. Tamosaitis]" and "ordered [him] off the site on July 1st and also had his badge taken and his Blackberry taken."  (Ex. F to ECF No. 112 at p. 46).  Dr. Tamosaitis echoes this in his declaration: "As a result of being fired by URS **(as dictated by Russo)**, I have missed out on being considered for the following jobs . . . ." (Tamosaitis Declaration, ECF No. 139 at Paragraph 67).  (Emphasis added).  It  is undisputed that URS E & C sought to have Dr. Tamosaitis reinstated to the WTP project, but BNI rejected that proposal.  The evidence shows URS E&C was, in general, pleased with the services Dr. Tamosaitis had rendered on the WTP project.  According to Dr. Tamosaitis, prior to his removal from the WTP project, URS E & C Manager Gay "often complimented me . . . and was very critical of BNI engineering . . . ." (Tamosaitis Declaration, ECF No. 139 at Paragraph 40).  The evidence also shows that right up until July 1, 2010, the date Russo issued his directive, URS E & C anticipated that Dr. Tamosaitis would have a continuing role on the WTP project after the June 30, 2010 deadline established for closing of the M3 mixing issue.  (Tamosaitis Declaration, ECF No. 139 at Paragraph 39 and Exhibit 9).

    URS E & C simply carried out a directive from BNI which it was contractually obligated to carry out, whatever reservations it may have had about its propriety.  URS E & C did not have the option of telling Russo it would not

///
///
///
///
///
///

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    7**

1    follow his directive.[4]  In deposition testimony, Dr. Tamosaitis acknowledged BNI

2    had to consent to URS E & C assigning him to a management position on the WTP

3    project.  (Ex. O to ECF No. 112, at pp. 15-17).[5]  Further evidence of Russo's

4    authority over Dr. Tamosaitis on the WTP project is Dr. Tamosaitis's

5    acknowledgment that "in January 2010, Russo replaced me as the manager leading

6    the M3 mixing issue resolution effort with retiring BNI manager Mike Robinson,

7    a BS civil engineer, because he wanted [a] BNI manager in that position."

8    (Tamosaitis Declaration, ECF No. 139 at Paragraph 22).

9        In Washington, a civil conspiracy lies when there is an agreement between

10   two or more persons to accomplish some purpose, not itself unlawful, by unlawful

11   means.  *Sterling Business Forms, Inc. v. Thorpe*, 82 Wn.App. 446, 451, 918 P.2d

12   531 (1996).  There is simply no evidence from which a reasonable inference can

13   be drawn that URS E & C agreed with BNI to engage in deliberately concerted

14   action to remove Dr. Tamosaitis from the WTP project in retaliation for him

15

16   [4]There is some indication in the record that Russo stated that if Dr.

17   Tamosaitis continued to work on the WTP, it would not be an allowable cost.

18   (Krumm Dep. at 73, ECF No. 144, Ex. 12 to Declaration of John P. Sheridan,

19   ECF No. 140). Even assuming this was an option, it simply would not have

20   been reasonable for URS E & C to pay Dr. Tamosaitis on a project on which

21   he clearly was not wanted by BNI and for which URS E & C would not be

22   reimbursed.  It makes sense, of course, that URS E & C would want Dr.

23   Tamosaitis rendering services on a project for which URS E & C would be

24   receiving reimbursement for the cost of his services.

25   [5]In his declaration (ECF No. 139 at Paragraph 6), Dr. Tamosaitis states that

26   in 2010 he was not in a key position and BNI had no authority to control his

27   placement at the WTP.  This appears to be contrary to his deposition

28   testimony, and is certainly contrary to the balance of the record.

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    8**

1  engaging in protected conduct.  Furthermore, in light of the clear authority of Frank
2  Russo, URS E & C's acquiescence to BNI's directive that Dr. Tamosaitis be
3  removed from the WTP project does not  constitute conspiratorial activity, and
4  does not constitute unlawful activity engaged in for an unlawful purpose.

5      The court notes that a significant amount of discovery occurred as part of the
6  Benton County litigation and the evidence developed there constitutes a substantial
7  part of the record before this court on the summary judgment motion filed by URS
8  E & C.  Based on the well-developed record before it, this court concludes a
9  reasonable inference cannot be drawn that URS E & C bears any responsibility for
10  the adverse action taken against Dr. Tamosaitis.  The court finds as a matter of law
11  that URS E & C did not retaliate against Dr. Tamosaitis.  BNI removed Dr.
12  Tamosaitis from the WTP project; not URS E & C.[6]

13      Dr. Tamosaitis has not been discharged from his employment with URS E
14  & C.  Nothing in the record creates a genuine issue of material fact that URS E &
15  C has discriminated him against with respect to his compensation, terms,
16  conditions, or privileges of employment in violation of the ERA.  His pay has not
17  been reduced.  He continues to receive bonuses.  (Declaration of Dave Hollan, ECF
18  No. 152).  He has engaged in other meaningful work since his removal from the
19  WTP (i.e., work at the Skunk Works),  and has been offered other meaningful work
20  which he has declined because of his unwillingness to relocate.  (Ex. G to ECF No.
21  155 at pp. 68-70; Ex. H to ECF No. 155 at p. 59).  He has been offered office space
22  ///

23
24      [6]Plaintiff and his counsel, in this suit and other litigation, have made oral
25  and written representations suggesting BNI was the party who caused Plaintiff
26  to be terminated from the WTP project.  URS E & C argues that judicial
27  estoppel should preclude Plaintiff from now arguing URS E & C is also
28  responsible.  It is not necessary to address that issue.

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    9**

other than the basement office he currently has, but has declined those offers. (Ex. I to ECF No. 155).

**CONCLUSION**

This court is without subject matter jurisdiction to entertain Dr. Tamosaitis's ERA claim. Even if this court had jurisdiction, it would find as a matter of law that URS E & C was not a party responsible for the adverse action against Dr. Tamosaitis and therefore, is not subject to liability under the ERA.

Defendant URS E & C'S Motion For Summary Judgment (ECF No. 108) is **GRANTED**. Judgment is awarded to URS E & C on Dr. Tamosaitis's ERA claim. Granting this motion renders **MOOT** Plaintiffs' Motion For Entry Of Final Judgment (ECF No. 101) and Motion For Certification Of Interlocutory Appeal pursuant to 28 U.S.C. §1292(b) (ECF No. 104). Those motions are **DISMISSED** because a final judgment will now be entered on all of the Plaintiffs' claims asserted against all of the named Defendants in the captioned matter. The District Executive is **DIRECTED** to enter judgment for Defendants against Plaintiffs pursuant to ECF Nos. 97, 98, 99, 100, and this order.

**IT IS SO ORDERED**. The District Executive shall forward copies of the Judgment and this Order to counsel of record.

**DATED** this ___10th___ of October, 2012.


*s/Lonny R. Suko*

_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-    10**